IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHRYN ANNETTE DURLAND, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-19-167-SPS |

## OPINION AND ORDER

The claimant requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age,

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was sixty-one years old at the time of the most recent administrative hearing (Tr. 733). She has a master's degree and has worked as an employment counselor (Tr. 29, 48, 733). The claimant alleges that she has been unable to work since June 1, 2012, due to fibromyalgia, carpal tunnel syndrome, and problems with her back and neck (Tr. 175).

## Procedural History

In March 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 161-62). Her application was denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 25, 2015 (Tr. 14-20). The Appeals Council denied review, but this Court granted the Commissioner's Unopposed Motion to Reverse and Remand Pursuant to Sentence Four in Case No. CIV-17-01-SPS and remanded the case for further proceedings on August 23, 2017 (Tr. 797-804). On remand, ALJ Lantz McClain conducted another administrative hearing, and in a decision dated April 24, 2018, determined that the claimant was not disabled from June 1, 2012, her alleged onset date, through December 31, 2017, her date last insured (Tr. 704-20). The claimant did not file written exceptions to the Appeals Council challenging the ALJ's April 2018 decision and

the Appeals Council did not assume jurisdiction, so the ALJ's April 2018 decision is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. § 404.984(d).

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation.  He found the claimant could perform light work as defined in 20 C.F.R. § 404.1576(b) with sitting/standing/walking at least six hours in an eight-hour workday and frequent, but not constant, use of the hands for handling or fingering (Tr. 712).  The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as an employment counselor (Tr. 719-20).

## Review

The claimant contends that the ALJ erred by failing to: (i) properly evaluate the mental health opinion evidence from treating physician Dr. Law and consultative physician Dr. Gordon, (ii) properly account for her pain and nonsevere depression when formulating the RFC, (iii)  support his RFC determination with substantial evidence, (iv) make specific findings regarding the physical and mental demands of her past relevant work, and (v) pose a hypothetical question to the vocational expert ("VE") that includes all her limitations.  The Court finds these contentions unpersuasive for the following reasons.

The ALJ found the claimant had the severe impairments of fibromyalgia, degenerative disc disease, carpal tunnel syndrome, and neuropathy of the feet and right upper extremity, but that her history of breast cancer and major depressive disorder were nonsevere (Tr. 707-11).  The relevant medical evidence reveals that primary care physician Dr. Law treated the claimant for, *inter alia,* back pain, fibromyalgia, and/or chronic pain

-4-

between April 2012 and March 2015 (Tr. 362-68, 387-92, 403-05, 541-48). Dr. Law's physical examinations were normal during this time and she regularly noted the claimant was not compliant with her medication, particularly her fibromyalgia medication (Tr. 366-67, 389, 404-03). A lumbar spine MRI performed on May 4, 2012 revealed mild multilevel degenerative changes and no evidence of high-grade stenosis (Tr. 684-85). A cervical spine MRI performed the same day revealed mild degenerative disc disease at C4-5 and C5-6 and no evidence of cervical stenosis (Tr. 688-89). An MRI of the claimant's thoracic spine also performed the same day was normal (Tr. 686-87). At a follow-up appointment on March 17, 2015, Dr. Law noted the claimant was "hurting emotionally" and "vented her difficulty" caring for her sick mother (Tr. 541-48). Her physical examination was normal and she referred the claimant for mental health care (Tr. 542, 546). On April 8, 2015, the claimant presented to Dr. Law for a "focused visit to fill out social security paperwork." (Tr. 629-33). Dr. Law found tenderness to all the multiple joints symmetrically on both sides from the claimant's shoulders to her lower extremities, but her exam was otherwise normal (Tr. 633). She referred the claimant to pain management, noting she was not taking her chronic pain medication as directed (Tr. 633).

      Dr. Cooper performed a consultative physical examination of the claimant on June 8, 2013 (Tr. 454). He found fifteen out of eighteen positive tender points consistent with a diagnosis of fibromyalgia, as well as paraspinal tension bilaterally in her neck and upper back (Tr. 456, 462). Dr. Cooper noted the claimant had full range of motion with pain in her cervical, thoracic, and lumbar-sacral spine; full grip strength bilaterally; and a negative straight-leg raising reflex bilaterally (Tr. 456). He diagnosed the claimant with, *inter alia,*

fibromyalgia, lumbosacral disc disease, cervical disc disease, chronic neck pain, chronic low back pain, chronic neck pain, and bilateral carpal tunnel syndrome (Tr. 457).

State agency physician Dr. Maria Pons completed a physical RFC assessment on July 13, 2013 and found the claimant could perform the full range of light work (Tr. 57-58). Her findings were affirmed on review (Tr. 64-65).

On May 20, 2015, social worker Debra Morrow performed a comprehensive assessment of the claimant's pain (Tr. 658-65). She noted the claimant had difficulty describing her own pain issues because of her focus on her family and situational stressors (Tr. 659). Ms. Morrow opined that the claimant's pain issues were not interfering with her functioning and that she did more physically than most people without chronic pain (Tr. 659).

Additionally, on May 20, 2015, the claimant presented to Dr. Gile and reported a long history of fibromyalgia and diffuse multisite pain and stated that she was not interested in further medication (Tr. 655). Dr. Gile recommended exercise, vitamin supplements, and lumbar facet injections for her chronic low back pain, which he later administered on June 30, 2015 (Tr. 655, 1175). The claimant next presented to Dr. Gile on August 29, 2016 (Tr. 1172-73). Dr. Gile noted the claimant could not recall whether the June 2015 injection was effective or not but reported massage therapy and chiropractic adjustments provided significant relief (Tr. 1172-74). On physical exam, Dr. Gile found moderate tenderness in the claimant's lower lumbar paraspinous muscles, normal flexion with mild to moderate pain, and reduced extension with moderate pain in the claimant's lumbosacral spine (Tr. 1172). Thereafter, the claimant received bilateral lumbar facet injections in August

and October 2016 (Tr. 1169, 1173). An October 2016 MRI of the claimant's cervical spine revealed multilevel degenerative changes with associated multilevel central canal and neural foraminal narrowing of varying degrees (Tr. 1195-96). At a follow-up appointment with Dr. Gile on December 12, 2016, the claimant reported that the lumbar injections provided significant relief and she further reported neck pain radiating into her shoulders, arms, and hands (Tr. 1167). Dr. Gile found reduced range of motion in the claimant's neck, reduced (4/5) muscle strength in the claimant's upper extremities, and tenderness to palpation in the claimant's cervical paraspinous muscles (Tr. 1167). He administered a cervical epidural steroid injection (Tr. 1168). At a follow-up appointment with Dr. Gile on March 1, 2017, the claimant reported the injections did not provide significant relief and that she "hurt all over." (Tr. 1164). Dr. Gile indicated that injection therapies were not effective for fibromyalgia and encouraged her to continue with massage therapy, chiropractic adjustments, and to use her TENS unit on a regular basis (Tr. 1164).

The relevant medical evidence as to the claimant's mental health reveals that on April 2, 2014, Dr. Gordon completed a Mental Disorders Disability Benefits Questionnaire for the U.S. Department of Veterans Affairs (Tr. 512-21). He opined that the claimant's major depressive disorder (moderate) caused "occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation." (Tr. 513). He indicated that the claimant's symptoms included depressed mood; suspiciousness; near continuous panic or depression affecting the ability to function independently, appropriately, and effectively; chronic sleep

impairment; difficulty understanding complex commands; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; and difficulty adapting to stressful circumstances, including work or a work-like setting (Tr. 515-16).

Dr. Law completed an RFC assessment on April 8, 2015 (Tr. 618-21). As relevant to this appeal, she opined that the claimant's pain moderately limited her ability to understand, remember, and carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal work day and work week without interruption from pain or medication based symptoms, and perform at a constant pace without an unreasonable number and length of rest periods (Tr. 621).

Psychiatrist Dr. Jennifer Boyer treated the claimant for major depression (moderate), chronic pain, and fibromyalgia between April 2015 and July 2017 (Tr. 643-45, 649-51, 1103-1149, 1228-35). Dr. Boyer's psychiatric exam findings were consistently normal and the claimant generally reported improvement in her pain and depression. At the outset of treatment, the claimant reported intermittent depression, pervasive loss of interest, and stress from caring for her mother with dementia (Tr. 649-51). Dr. Boyer noted the claimant had a depressed mood, labile affect, good concentration, and fair judgment (Tr. 650-51). She diagnosed the claimant with, *inter alia,* major depression (moderate), chronic pain, and fibromyalgia, and prescribed medications (Tr. 651). By August 2015, the claimant was less depressed and angry overall, her pain was improved, and her social activity was increased (Tr. 1139-40). At a follow-up appointment in April 2016, the

claimant reported that her chronic pain was manageable, improved with medication, and decreased as she reduced her stress (Tr. 1122-23). The claimant also indicated that her mood was stable so long as she took her medication (Tr. 1123).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony and the medical and opinion evidence. At step two, he determined that the claimant was mildly limited in her ability to understand, remember, or apply information, and to concentrate, persist, or maintain pace, but was not limited in her ability to interact with others and adapt or manage herself (Tr. 707-11). In making such determination, the ALJ relied in large part on the claimant's function report and Dr. Boyer's treatment notes (Tr. 707-08). Because the claimant's major depressive disorder caused no more than mild limitation in any of the functional areas, the ALJ concluded it was nonsevere (Tr. 708). In discussing the opinion evidence, the ALJ gave Dr. Gordon's consultative opinion no weight at step two, finding: (i) it was internally inconsistent, (ii) it was unsupported by the record as a whole, (iii) it contained few objective findings, (iv) the claimant had not engaged in mental health treatment for more than a decade prior to his opinion, and (v) it was inconsistent with Dr. Boyer's subsequent treatment notes reflecting improved symptoms and unremarkable status examinations (Tr. 708-10). The ALJ declined to give Dr. Law's opinion controlling weight because her opinion was inconsistent with her own treatment notes, the claimant's conservative treatment, and the claimant's daily activities (Tr. 718-19). The ALJ gave no weight to Dr. Law's mental limitations because they were outside her expertise, unsupported by her own treatment notes and the medical record, and inconsistent with the claimant's single mental health treatment note at that time (Tr. 719).

The ALJ then gave considerable weight to the state agency physicians' opinion that the claimant could perform light work but further limited her to frequent handling and fingering due to her carpal tunnel syndrome (Tr. 717).

The claimant first asserts that the ALJ erred in evaluating the medical source opinion evidence from treating physician Dr. Law and consultative physician Dr. Gordon by engaging in prohibited "picking and choosing" among their findings and by failing to discuss all the factors in 20 C.F.R. § 404.1527. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's treatment of Dr. Law's opinion and Dr. Gordon's opinion, as described above, meets these standards. The ALJ specifically addressed their

findings, and the Court finds that he considered each opinion in turn and gave numerous reasons, supported by the record, for adopting or not adopting the limitations described in them. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted].

The claimant next asserts that the ALJ erred at step four by finding she could return to her past relevant work as an employment counselor without determining the mental and physical demands of this work. Step four has three distinct phases. The ALJ must establish the claimant's RFC, then determine the demands of her past relevant work (both physical and mental), and ultimately decide if her RFC enables her to meet those demands. *See, e. g., Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ must specify his factual findings at each phase, *see id.*, and although the ALJ may *rely on* information provided by a VE, "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform h[er] past relevant work." *Id.* at 1025.

With regard to phase two, the Court finds the ALJ's questioning of the claimant at the administrative hearings and the VE's testimony about the exertional and skill levels of the jobs was sufficient to establish the demands of the claimant's past work (Tr. 30-36, 42-49, 733-34, 744, ). *See, e. g.*, *Westbrook v. Massanari*, 26 Fed. Appx. 897, 903 (10th Cir. 2002) (finding that remand under *Winfrey* is appropriate only when the record is "devoid of even any mention of the demands of past relevant work[.]") [citation omitted] [unpublished opinion]. Even assuming *arguendo* the demands of the claimant's past work

-11-

were insufficiently developed, the ALJ determined the claimant could return to her past relevant work as an employment counselor *as it was generally performed in the national economy.* This finding makes any further inquiry into the actual demands of the jobs unnecessary. *See*, *e.g.*, *Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1050 (10th Cir. 1993) (noting that the ALJ shall consider "the claimant's ability to perform either . . . '[t]he actual functional demands and job duties of a particular past relevant job; or . . . [t]he functional demands and job duties . . . as generally required by employers throughout the national economy.' "), *quoting* Soc. Sec. Rul. 82–61, 1982 WL 31387, at *1. *See also Wise v. Barnhart*, 42 Fed. Appx. 331, 333 (10th Cir. 2002) ("[T]he issue is not whether claimant can return to her actual past job, but to the type of work she performed in the past.") [unpublished opinion], *citing Andrade*, 985 F.2d at 1051. Further, the ALJ made his own phase-three findings that the claimant's RFC did not preclude her performance of past work an employment counselor (Tr. 719). Although the ALJ clearly relied on the VE's testimony for his phase-three findings, *see Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) ("An 'ALJ may rely on information supplied by the VE at step four.'"), *quoting Winfrey*, 92 F.3d at 1025, he did not "delegate the analysis to the [VE]." *Id.* ("The ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis."). Thus, the ALJ's analysis of the claimant's past relevant work satisfied the requirements set forth in *Winfrey*.

The claimant next contends that the ALJ failed to properly account for her nonsevere depression because he did not include any mental limitations in the RFC and relied upon

his own expertise, rather than a medical opinion, to assess her mental functioning. The Court agrees that the ALJ is required to consider all of a claimant's impairments—both severe and non-severe—singly and in combination, when formulating a claimant's RFC. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].' "), *quoting Langley v. Barnhart*, 373 F.3d 1116, 1123–24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. The Courts finds that the ALJ did not, however, commit any error in his analysis of the claimant's nonsevere depression. He noted and discussed the findings of the claimant's various treating and consultative physicians, and he explained his reasons for not including any mental limitations in the RFC (Tr. 707-11, 718-19). Thus, his opinion clearly indicates that he adequately considered the medical evidence of record related to the claimant's nonsevere depression in reaching his conclusion regarding the RFC. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). As the ALJ correctly noted, the claimant performed

significant daily activities, Dr. Boyer's mental status examinations were unremarkable, and she showed consistent improvement in her depressive symptoms with treatment (Tr. 710, 719). Accordingly, the ALJ did not err by failing to include mental limitations in the RFC and his decision declining to do so is supported by substantial evidence.

The claimant next contends that the ALJ failed to perform a proper analysis of her subjective statements of pain. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See, e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[4] As part of the

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in

symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 404.1529(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

In this case, the Court finds that the ALJ set out the appropriate analysis, and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. Specifically, the ALJ noted inconsistencies between the claimant's subjective statements and her daily activities,

---

16-3p are similar to those set forth in *Luna*). The Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

including cleaning her house, cleaning her mother's house and yard, going to monthly club meetings, preparing dinner, and cleaning up after dinner, as well as Ms. Morrow's opinions that the claimant's pain issues were not interfering with her functioning and that she did more physical activity than most people without chronic pain (Tr. 717).  Accordingly, the ALJ's determination is entitled to deference and the Court finds no error in analyzing the claimant's subjective statements of pain.

Finally, the claimant contends that the ALJ failed to include all her limitations in the hypothetical question posed to the VE.  Specifically, she asserts that the hypothetical question should have included limitations for her depression.  However, as set forth above, the ALJ clearly considered the claimant's depression.  Furthermore, she does not point to any evidence supporting the additional limitations she claims.  Accordingly, the ALJ was not required to include additional limitations in his RFC assessment, or in his hypothetical question posed to the VE.  *See Qualls,* 206 F.3d at 1373 ("We have already rejected [the claimant's] challenges to the ALJ's RFC assessment.  The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment.  Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").  *See also Adams v. Colvin,* 553 Fed. Appx. 811, 815 (10th Cir. 2014) ("An ALJ does not need to account for a limitation belied by the record when setting a claimant's RFC."), *citing Qualls,* 206 F.3d at 1372.

The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination, and ultimately found that the claimant was not disabled.  *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical

record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before he can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949.  This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

In summary, the Court finds that correct legal standards were applied, and that the decision of the Commissioner is supported by substantial evidence. The Commissioner's decision is therefore hereby AFFIRMED.

**DATED** this 30th day of September, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**